1 | CYRUS ZAL, SBN: 102415
CYRUS ZAL, A PROFESSIONAL CORPORATION
2 | 102 Mainsail Court
Folsom, CA  95630
3 | Telephone:   (916) 220-4315
Fax:           (916) 985-4893
4 | Email: czal47@comcast.net

5 | Attorney for Plaintiff GOVERNMENT APP SOLUTIONS, INC., a California corporation

6

7 | UNITED STATES DISTRICT COURT

8 | FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10

11 | GOVERNMENT APP SOLUTIONS, INC.,         )   **Case No.**
a California corporation,                )
12 |                                          )
                                         )
13 |                 Plaintiff,              )
                                         )
14 |         v.                              )   **COMPLAINT OF PLAINTIFF**
                                         )   **GOVERNMENT APP SOLUTIONS, INC.**
15 |                                          )   **FOR DAMAGES FOR:**
                                         )
16 |                                          )   **1. VIOLATIONS OF THE FEDERAL**
THE FEDERAL BUREAU OF                     )   **RACKEETER INFLUENCED AND**
17 | INVESTIGATION, THE UNITED STATES         )   **CORRUPT ORGANIZATIONS ACT**
ATTORNEY'S OFFICE FOR THE                )   **[18 U.S. CODE §1964];**
18 | EASTERN DISTRICT OF CALIFORNIA,          )
MICHAEL ANDERSON, AMY S.                  )   **2. FEDERAL CIVIL RIGHTS**
19 | HITCHCOCK, REBEKAH BILLS, RACHEL         )   **VIOLATIONS;**
LACHAPELLE, CITY OF NEW HAVEN,            )
20 | KEVIN JOHNSON, NICOLE WEST, TONI         )   **3. NEGLIGENCE; and**
HARP, DARYL JONES, ANDREA SCOTT,          )
21 | MICHAEL TUBBS, DANIEL LOPEZ, ERIC        )   **4. BREACH OF CONTRACT**
GARCETTI, GREGORY J. STANTON,             )
22 | CASEY LUND,                              )
and DOES 1-999,                          )   **JURY TRIAL DEMANDED**
23 |                                          )
                                         )
24 |                 Defendants.             )
                                         )
25 | _____ _

26

1

Plaintiff GOVERNMENT APP SOLUTIONS, INC. ("Plaintiff") for its Complaint against defendants alleges as follows:

1.     **JURISDICTION.**  Plaintiff brings this action pursuant to 18 U.S.C. §1962 and §1964 for treble damages, and to redress the violations by certain of the named Defendants of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Jurisdiction is conferred on this Court by 18 U.S.C. §1964(c), which provides for original jurisdiction in this Court of all suits brought pursuant to 18 U.S.C. §1962. Jurisdiction is also conferred by 28 U.S.C. § 1331 because claims for relief herein derive from the laws of the United States.

2.     **INTRADISTRICT ASSIGNMENT.**  Venue properly lies in the Eastern District of California, pursuant to 28 U.S.C. §1391, in that a substantial amount of the events or omissions giving rise to the claims alleged herein occurred in the Eastern District of California in the Counties of Placer, Sacramento and San Joaquin, California. In addition, a number of the defendants sued herein, including employees and officers of the United States of America, and agencies thereof, acting in their official capacity and under color of legal authority, reside in or are employed in the Eastern District of California.

3.     At all times mentioned herein, Plaintiff was, and is, a corporation organized and existing under the laws of the State of California with its principal place of business in the Eastern District of California.

4.     At all times mentioned herein, Defendant Federal Bureau of Investigation ("Defendant FBI") was, and presently is, an agency of the United States of America with

an office located in the Eastern District of California in the City of Roseville, County of Placer, California.

5. At all times mentioned herein, Defendant United States Attorney's Office for the Eastern District of California ("Defendant U.S. Attorney's Office") was, and presently is, an agency of the United States of America with an office located in the Eastern District of California in the City of Sacramento, County of Sacramento, California.

6. At all times mentioned herein, Defendant Michael Anderson ("Defendant Anderson") was an Assistant U.S. Attorney and an officer and employee of Defendant U.S. Attorney's Office who was acting in the scope and course of his employment, and acting in his official capacity and under color of legal authority, in engaging in the conduct described herein.

7. At all times mentioned herein, Defendant Amy S. Hitchcock ("Defendant Hitchcock") was an Assistant U.S. Attorney and an officer and employee of Defendant U.S. Attorney's Office who was acting in the scope and course of her employment, and acting in her official capacity and under color of legal authority, in engaging in the conduct described herein.

8. At all times mentioned herein, Defendant Rebekah Bills ("Defendant Bills") was an FBI Special Agent and an employee of Defendant FBI who was acting in the scope and course of her employment, and acting in her official capacity and under color of legal authority, in engaging in the conduct described herein. Defendant Bills violated Defendant FBI's and the Office of Inspector General's policy regarding the

3

management of Confidential Human Sources ("CHS") by developing a personal relationship with Derek Bluford, the Confidential Human Source in this case. Defendant Bills met with CHS Derek Bluford in social settings several times, including bringing her child with her to meetings with CHS Derek Bluford. Defendant Bills also purchased personal items of clothing for CHS Derek Bluford and instructed CHS Derek Bluford to break the law on several occasions without the proper filling out of the "Otherwise Illegal Activity" forms, which are required whenever a CHS is authorized to commit illegal acts.

9.     At all times mentioned herein, Defendant Rachel LaChapelle ("Defendant LaChapelle") was an FBI agent and an employee of Defendant FBI who was acting in the scope and course of her employment, and acting in her official capacity and under color of legal authority, in engaging in the conduct described herein.

10.     At all times mentioned herein, Defendant City of New Haven ("Defendant New Haven") was, and presently is, a municipality located in the State of Connecticut.

11.     At all times mentioned herein, Defendant Kevin Johnson ("Defendant Johnson") was, and presently is, an individual residing and doing business in the Eastern District of California. Defendant Johnson is the former Mayor of the City of Sacramento.

12.     At all times mentioned herein, Defendant Nicole West ("Defendant West") was, and presently is, an individual residing and employed in the Eastern District of California.

13.     At all times mentioned herein, Defendant Toni Harp ("Defendant Harp")

was the Mayor of Defendant New Haven and currently is no longer in that position.

14.     At all times mentioned herein, Defendant Daryl Jones ("Defendant Jones") was employed by Defendant New Haven as its Controller.

15.     At all times mentioned herein, Defendant Andrea Scott ("Defendant Scott") was employed by Defendant New Haven and was the Executive Assistant to Defendant Harp.

16.     At all times mentioned herein, Defendant Michael Tubbs ("Defendant Tubbs") was the Mayor of the City of Stockton, California, and currently is no longer in that position.

17.     At all times mentioned herein, Defendant Daniel Lopez ("Defendant Lopez") was employed by the City of Stockton, California, and was the Senior Advisor to Defendant Tubbs.

18.     At all times mentioned herein, Defendant Eric Garcetti ("Defendant Garcetti") was, and presently is, the Mayor of the City of Los Angeles, California.

19.     At all times mentioned herein, Defendant Gregory J. Stanton ("Defendant Stanton") was the Mayor of the City of Phoenix, Arizona, and is currently a Member of the United States House of Representatives as the Representative of Arizona's 9th Congressional District.

20.     At all times mentioned herein, Defendant Casey Lund ("Defendant Lund") was an individual employed as an independent contractor by Defendant FBI.

21.     The true names and capacities, whether individual, corporate, associate, partnership or otherwise, of Defendants named herein as DOES 1 through 999 are

5

unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. When the true names and capacities of said Defendants are ascertained, Plaintiff will amend the Complaint by inserting said true names and capacities in place of said fictitious names and capacities. Plaintiff is informed and believes, and thereon alleges, that DOES 1 through 999, and each of them, are legally responsible in some manner for the events and happenings referred to herein, and proximately caused or contributed to the injuries and damages to Plaintiff which are hereinafter alleged. Whenever in this Complaint any Defendant is the subject of any charging allegation by Plaintiff, it shall be deemed that said Defendants DOES 1 through 999 are likewise the subject of said charging allegation.

22.    Plaintiff is informed and believes, and on the basis of that information and belief alleges, that Defendants, including the DOE defendants, were agents and employees of each other and in doing the acts alleged herein were acting within the course and scope of that agency and employment. At all times relevant herein, each of the Defendants, including the DOE defendants, was the agent, servant, partner, officer, director, or employee of each of the remaining Defendants and was doing the acts herein complained of within the scope of his/her/its agency and employment.

## INTRODUCTION AND FACTUAL ALLEGATIONS COMMON
## TO ALL RICO COUNTS

23.    Plaintiff hereby re-alleges paragraphs 1 through 22 above, and incorporates them herein as though set forth in full.

24.    At all relevant times mentioned herein, Plaintiff's business was providing

a crowdsourcing platform with software and technical support to municipalities throughout the United States in order to increase road safety, to reduce distracted driving incidents, to issue and collect parking citations, and to generally improve community living conditions through Plaintiff's crowdsourcing platform.

25.    In or about January of 2018, Plaintiff entered into an oral contract with an individual named Derek L. Bluford (hereinafter "Bluford") for Bluford to communicate with, and to obtain contracts with, municipalities to utilize the platform created by Plaintiff for various municipal functions, such as parking enforcement and other city services. The essential terms of the oral contract between Plaintiff and Bluford were as follows: Bluford was to communicate with, and to obtain contracts with, various municipalities in the United States to utilize Plaintiff's platform and services, and Plaintiff would compensate Bluford for his services depending on the size of the contract that Bluford obtained for Plaintiff. Bluford's relationship with Plaintiff was that of an independent contractor.

26.    On or about July 1 2018, Bluford, as the independent contractor for Plaintiff, entered into a written "Consulting Agreement" with Defendant Johnson to market Plaintiff's services to include the cities of Los Angeles, California; Phoenix, Arizona; and New Haven, Connecticut. The Consulting Agreement had the following schedule of compensation that Defendant Johnson would receive for his services in marketing Plaintiff's services to the said municipalities: (1) Defendant Johnson would receive 17% of all current and future net revenues generated from Plaintiff's contract with the City of Los Angeles, California; (2) Defendant Johnson would receive 10% of

all current and future net revenues generated from Plaintiff's contract with the City of Phoenix, Arizona; and (3) Defendant Johnson would receive 10% of all current and future net revenues generated from Plaintiff's contract with the City of New Haven, Connecticut. At the time Defendant Johnson entered the Consulting Agreement with Plaintiff, Defendant Johnson had the intention to willingly, knowingly and illegally bribe the mayors of those cities in order to obtain contracts for Plaintiff. Plaintiff was never aware of Defendant Johnson's bribery scheme at any time when the bribery scheme was being implemented, and Plaintiff only became aware of the bribery scheme when Bluford published a book in October of 2020 entitled *The Mighty Have Fallen*.

27.     On January 11, 2018, Defendant U.S. Attorney's Office issued a criminal indictment against Bluford for Wire Fraud and Monetary Transaction Involving Criminally Derived Funds.

28.     In or about October of 2018, Bluford and Defendant U.S. Attorney's Office began exploring ways for Bluford to assist Defendant U.S. Attorney's Office in the investigation of public corruption. Eventually, Bluford became a Confidential Human Source ("CHS") for Defendant FBI, with the goal of investigating public corruption using Bluford as the point man in Defendant FBI's sting operations. In these sting operations conducted by Defendant FBI under the direction of Defendant U.S. Attorney's Office, Bluford was instructed by Defendant FBI to offer and deliver bribes to mayors and municipal employees in return for securing contracts for Plaintiff's services. Defendant Johnson was a main target of this sting operation conducted by Defendant FBI. Defendant West was Defendant Johnson's assistant in conducting the

bribery schemes described herein. Neither Defendant FBI nor Defendant U.S. Attorney's Office ever at any time informed Plaintiff that Plaintiff would be used as the company on behalf of whom the bribes would be offered in the sting operations, and neither Defendant FBI nor Defendant U.S. Attorney's Office ever obtained the consent of Plaintiff for Plaintiff to be used in the sting operations as the company on behalf of whom the bribes would be offered. Plaintiff only became aware of the sting operations when Bluford published a book in October of 2020 entitled *The Mighty Have Fallen*.

29.    Plaintiff is informed and believes, and on the basis of that information and belief alleges, that Bluford was granted complete civil and criminal immunity by Defendant U.S. Attorney's Office to operate as a CHS on behalf of Defendant FBI.

30.    Defendant FBI informed Plaintiff in or about February of 2020 that Plaintiff's contract with the Defendant New Haven had not been obtained "in good faith", but Defendant FBI did not inform Plaintiff of the reason why Plaintiff's contract with Defendant New Haven was not "in good faith". Further, Defendant FBI did not inform Plaintiff at that time, or at any time, of its sting operations that had used Plaintiff as the company on whose behalf the bribes were being offered by Bluford, who was Defendant FBI's CHS.

31.    As a CHS for Defendant FBI, with Defendant Johnson providing the money, Bluford did in fact deliver cash bribes or arrange for online payments to the city officials, all disguised as contributions to the city official's re-election campaign. The recipients of such bribes were Defendant Harp and Defendant Stanton. Defendant Tubbs

agreed to receive a bribe, but Bluford's role as a CHS terminated before the bribe could be delivered to Defendant Tubbs. In return for providing the money for the bribes to the said Defendants, Defendant Johnson was to receive a percentage of the money generated by Plaintiff's contract with the municipality whose public official had been bribed, pursuant to the Consulting Agreement described above.

32.     For purposes of Plaintiff's RICO claim, Defendants Johnson, Harp, Jones, Tubbs, Lopez, Garcetti and Stanton are the "culpable persons" who are capable of holding a legal or beneficial interest in property. Defendant Johnson, along with the association of Defendant West and Bluford, comprise the association-in-fact enterprise common to all of the bribery schemes described herein. There were four different association-in-fact enterprises, one such enterprise for each of the four cities whose mayors received bribes or who agreed to receive bribes. Defendant Johnson, Defendant West and Bluford were members of all four association-in-fact enterprises, and the other members of the association-in-fact enterprises were unique to each of the four cities of New Haven, Phoenix, Los Angeles and Stockton, as more fully described in detail in the individual RICO claims set forth below. In addition, Defendant Johnson conspired with Defendants West, Harp, Jones, Tubbs, Lopez, Garcetti and Stanton to violate, and in fact did violate, Federal and state laws outlawing bribery, conspiracy to bribe, mail fraud and wire fraud. All of these events and occurrences are described more fully and in detail in the individual RICO claims set forth below.

33.     The bribery schemes and the illegal four association-in-fact enterprises described above affected interstate commerce, as the bribes and the conspiracy to bribe

took place in California, Arizona and Connecticut in order to influence the corrupt officials (named defendants herein) to utilize the services of Plaintiff, a California corporation. Plaintiff's legitimate services affected interstate commerce, in that Plaintiff offered its services to municipalities in various states.

34.     There was a pattern of racketeering perpetrated by Defendant Johnson and Defendant West and Bluford in their four illegal bribery enterprises, in that there were multiple acts of racketeering activity, the last of which occurred within ten years after the commission of a prior act of racketeering activity.  The acts of racketeering were related and continuous so as to form a pattern of racketeering. The pattern of racketeering is more fully described in detail in the individual RICO claims set forth below.

35.     Plaintiff sustained damages and injuries to its business and property by reason of the violation of 18 U.S.C. §1962 by Defendants Johnson, West, Harp, Jones, Tubbs, Lopez, Garcetti and Stanton, as more fully described in detail in the individual RICO claims set forth below.

## COUNT I

### Violations of RICO §1962(c) and §1962(d)

### [Against Defendants Johnson, West, Harp, Scott and Jones]

36.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 35 above as if fully set forth herein.

37.     This Count I is against Defendants Johnson, West, Harp, Scott and Jones (the "Count I Defendants"). The Count I Defendants, along with Bluford, comprised the

association-in-fact enterprise with respect to the City of New Haven, Connecticut.

38.     At all relevant times mentioned herein, Plaintiff was engaged in interstate commerce and Plaintiff's activities affected interstate commerce in that Plaintiff offered its services to municipalities in various states. In addition, the association-in-fact enterprise consisting of the Count I Defendants, plus Bluford, and the pattern of racketeering engaged in by the Count I Defendants, affected interstate commerce.

39.     The Count I Defendants agreed to and did conduct and participate in the conduct of the association-in-fact enterprise through a pattern of racketeering activity, and for the unlawful purpose of conducting business through bribes, conspiracy to bribe, wire fraud, and mail fraud by the following unlawful predicate acts, in which the Count I Defendants acted willfully and with actual knowledge of the illegal activities:

(a)     On August 24, 2019, Defendant Harp, who at the time was the Mayor of the City of New Haven, Connecticut, and Defendant Scott accepted an in-person cash bribe of $7,000 from Bluford, and around that same time period of August and September of 2019, Defendant Harp also received cash and on-line donations as bribes in the amount of $25,000, all in return for the City of New Haven granting a contract to Plaintiff for Plaintiff's services. These bribes, which were negotiated by Defendant Johnson and Bluford with Defendant Harp, were paid to Defendant Harp by money supplied to Bluford by Defendant FBI, and the total amount of the bribes was in excess of $25,000, which included the $7,000 cash bribe given in-person by Bluford to Defendants Harp. After the bribes were paid, the City of New Haven did enter into a contract with Plaintiff for Plaintiff's services. At all times mentioned herein, Plaintiff

was never aware that the contract had been obtained corruptly through bribery. The bribes given to, and accepted by, Defendants Harp and Jones were in violation of the Federal bribery statute, 18 U.S.C. §666(a), which applies to entities like the City of New Haven, which receive benefits of $10,000 or more from Federal programs.  The bribes given to and accepted by Defendants Harp and Jones were also in violation of the Federal conspiracy statute, 18 U.S.C. §371.

(b)    In furtherance of the bribery scheme of the Count I Defendants described above, the Count I Defendants also committed a violation of 18 U.S.C. §1343, the Federal wire fraud statute, by text messages sent between Bluford and Defendant Jones on August 24, August 25, August 26, August 27, August 28, and September 2019. These text messages were in furtherance of the bribery scheme described above.

(c)    In furtherance of the bribery scheme of the Count I Defendants described above, the Count I Defendants also committed a violation of 18 U.S.C. §1341, the mail fraud statute, when Defendants Scott, Harp and Jones arranged for a certified letter to be mailed to Bluford on September 3, 2019 containing a $7,000 check that was being sent to Bluford to repay Bluford for the $7,000 cash in-person bribe described above, which was a bribe disguised as a contribution to Defendant Harp's re-election campaign. The $7,000 check was mailed to Bluford because Defendant Harp had become suspicious of the $7,000 in-person cash bribe she had received from Bluford. Defendant Scott was the remitter of the $7,000 check being mailed to Bluford to return the $7,000 cash bribe Defendant Harp had received. The use of the mail was in furtherance of the bribery scheme described above. After Bluford received the $7,000 check mailed to him by

Defendant Scott, Bluford was instructed by Defendants Harp and Scott to make an on-line donation of $7,000 to Defendant Harp's re-election campaign to replace the $7,000 cash bribe that was returned to Bluford by Defendant Scott. This use of the internet to bribe Defendant Harp was another violation of 18 U.S.C. §1343, the Federal wire fraud statute and was in furtherance of the bribery scheme described above.

(d)      As part of the bribery scheme, Defendants Harp and Johnson agreed that they would split the 10% of the net revenues that Plaintiff's contract with the City of New Haven would generate, as Defendant Johnson had previously entered into the Consulting Agreement with Plaintiff described above in which Plaintiff agreed to give to Defendant Johnson 10% of the net revenues from the City of New Haven contract in return for Defendant Johnson's help in securing that contract.

40.      Pursuant to and in furtherance of their illegal bribery scheme, the Count I Defendants committed multiple related acts of racketeering activity as described in paragraph 39 above, subsections (a) through (d).

41.      The acts of bribery, conspiracy to commit bribery, wire fraud and mail fraud described in detail in paragraph 38 above, subsections (a) through (d), constitute a pattern of racketeering activity pursuant to 18 U.S.C. §1961(5).

42.      The Count I Defendants have directly and indirectly conducted and participated in the conduct of the association-in-fact enterprise's affairs through the pattern of racketeering and activity described in paragraph 38 above, subsections (a) through (d), in violation of 18 U.S.C. §1962(c).

43.      As set forth above in paragraphs 37 through 42, the Count I Defendants

14

agreed and conspired to violate 18 U.S.C. §1962(c). The specific conduct of the Count I Defendants in conspiring to violate 18 U.S.C. §1962(c) is set forth above in paragraphs 37 through 42.

44.     The Count I Defendants have intentionally conspired and agreed to participate in the conduct of the affairs of the association-in-fact enterprise through a pattern of racketeering activity as set forth above in paragraphs 36 through 41. The Count I Defendants knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the bribery scheme as set forth above in paragraphs 37 through 42. That conduct constitutes a conspiracy to violate 18 U.S.C. §1962(c), in violation of 18 U.S.C. §1962(d).

45.     As a direct and proximate result of the Count I Defendants' racketeering activities and violations of 18 U.S.C. §1962(c) as described above, and as a direct and proximate result of the Count I Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy and violations of 18 U.S.C. §1962(d) as described above, Plaintiff has been injured in its business and property as follows:

(a)     Plaintiff has lost all value as a viable company due to the bribery scheme of the Count I Defendants as described above, in that no municipality in the United States will do business with a company that was involved in offering bribes to public officials to secure city contracts. Before the bribery scheme became public knowledge, Plaintiff was valued at $15 Million Dollars. After the bribery scheme became public knowledge, the value of Plaintiff has plummeted to zero.

(b)     Plaintiff spent $150,000 in out-of-pocket costs pursuant to its contract with

Defendant New Haven. Due to the bribery scheme of the Count I Defendants, Defendant New Haven has refused to reimburse Plaintiff for this $150,000 expenditure.

(c)     Plaintiff expended several hundreds of thousands of dollars to develop the platform for its contract with Defendant New Haven. Plaintiff has not been reimbursed for this expenditure.

46.     WHEREFORE, Plaintiff requests the Court to enter judgment against the Count I Defendants as set forth below.

## COUNT II

### Violations of RICO §1962(c) and §1962(d)

### [Against Defendants Johnson, West and Stanton]

47.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 46 above as if fully set forth herein.

48.     This Count II is against Defendants Johnson, West and Stanton (the "Count II Defendants"). The Count II Defendants, along with Bluford, comprised the association-in-fact enterprise with respect to the city of Phoenix, Arizona.

49.     At all relevant times mentioned herein, Plaintiff was engaged in interstate commerce and Plaintiff's activities affected interstate commerce in that Plaintiff offered its services to municipalities in various states. In addition, the association-in-fact enterprise consisting of the Count II Defendants, plus Bluford, and the pattern of racketeering engaged in by the Count II Defendants, affected interstate commerce.

50.     The Count II Defendants agreed to and did conduct and participate in the conduct of the association-in-fact enterprise through a pattern of racketeering activity,

16

and for the unlawful purpose of conducting business through bribes, conspiracy to bribe, wire fraud, and mail fraud by the following unlawful predicate acts, in which the Count II Defendants acted willfully and with actual knowledge of the illegal activities:

(a)     In or about January of 2018, when Defendant Stanton was the mayor of the city of Phoenix, Defendant Stanton agreed to accept a payment of $25,000 in exchange for his help with Plaintiff obtaining a contract with the city of Phoenix. The $25,000 payment was, in fact, to be a bribe to be given to Defendant Stanton and negotiated and arranged by Defendant Johnson and Bluford. Defendant Stanton's agreement to accept the $25,000 bribe and Defendant Johnson's agreement to pay the $25,000 bribe constituted a conspiracy between Defendant Stanton and Defendant Johnson to bribe Defendant Stanton in violation of the Federal conspiracy statute, 18 U.S.C. §371.

(b)     In furtherance of the bribery scheme of the Count II Defendants described above, in or about the first few months of 2018, Defendant Stanton accepted a bribe in the amount of $15,000 that was paid to him by Defendant Johnson. The $15,000 bribe given to, and accepted by, Defendant Stanton was in violation of the Federal bribery statute, 18 U.S.C. §666(a), which applies to entities like the City of Phoenix, which receive benefits of $10,000 or more from Federal programs. The $15,000 was a partial payment of the $25,000 that had been promised to Defendant Stanton. The balance of $10,000 was to be paid to Defendant Stanton after Plaintiff had received a contract from the city of Phoenix, but Plaintiff never received such a contract.

(c)     In furtherance of the bribery scheme of the Count II Defendants described above, the Count II Defendants also committed multiple violations of 18 U.S.C. §1343, the Federal wire fraud statute. For example, on February 7, 2018, after Bluford had sent

an email to Defendant Stanton, Defendant Stanton sent an email to Bluford warning Bluford that the public and media had access to Defendant Stanton's public email address. On February 7, 2018, Defendant West sent an email to Bluford informing Bluford of Defendant Stanton's private email address. On April 30, 2018, Defendant Johnson sent an email to Bluford and to Defendant West in furtherance of the Count II Defendants' bribery scheme. All these emails were in furtherance of the bribery scheme described above, and each email constitutes wire fraud in violation of 18 U.S.C. §1343.

51.     Pursuant to and in furtherance of their illegal bribery scheme, the Count II Defendants committed multiple related acts of racketeering activity as described in paragraph 50 above, subsections (a) through (c).

52.     The acts of bribery, conspiracy to commit bribery, wire fraud and mail fraud described in detail in paragraph 50 above, subsections (a) through (c), constitute a pattern of racketeering activity pursuant to 18 U.S.C. §1961(5).

53.     The Count II Defendants have directly and indirectly conducted and participated in the conduct of the association-in-fact enterprise's affairs through the pattern of racketeering and activity described in paragraph 50 above, subsections (a) through (c), in violation of 18 U.S.C. §1962(c).

54.     As set forth above in paragraphs 48 through 53, the Count II Defendants agreed and conspired to violate 18 U.S.C. §1962(c). The specific conduct of the Count II Defendants in conspiring to violate 18 U.S.C. §1962(c) is set forth above in paragraphs 48 through 53.

55.     The Count II Defendants have intentionally conspired and agreed to

18

participate in the conduct of the affairs of the association-in-fact enterprise through a pattern of racketeering activity as set forth above in paragraphs 47 through 52. The Count II Defendants knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the bribery scheme as set forth above in paragraphs 48 through 53. That conduct constitutes a conspiracy to violate 18 U.S.C. §1962(c), in violation of 18 U.S.C. §1962(d).

56.   As a direct and proximate result of the Count II Defendants' racketeering activities and violations of 18 U.S.C. §1962(c) as described above, and as a direct and proximate result of the Count II Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy and violations of 18 U.S.C. §1962(d) as described above, Plaintiff has been injured in its business and property as follows:

(a)   Plaintiff has lost all value as a viable company due to the bribery scheme of the Count II Defendants as described above, in that no municipality in the United States will do business with a company that was involved in offering bribes to public officials to secure city contracts. Before the bribery scheme became public knowledge, Plaintiff was valued at $15 Million Dollars. After the bribery scheme became public knowledge, the value of Plaintiff has plummeted to zero.

(b)   Plaintiff expended substantial amounts of money to develop the platform specifically for the city of Phoenix. Plaintiff has not been reimbursed for this expenditure.

57.   WHEREFORE, Plaintiff requests the Court to enter judgment against the Count II Defendants as set forth below.

## COUNT III

### Violation of RICO §1962(c) and §1962(d)

### [Against Defendants Johnson, West and Garcetti]

58.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 57 above as if fully set forth herein.

59.     This Count III is against Defendants Johnson, West and Garcetti (the "Count III Defendants"). The Count III Defendants, along with Bluford, comprised the association-in-fact enterprise with respect to the city of Los Angeles, California.

60.     At all relevant times mentioned herein, Plaintiff was engaged in interstate commerce and Plaintiff's activities affected interstate commerce in that Plaintiff offered its services to municipalities in various states. In addition, the association-in-fact enterprise consisting of the Count III Defendants, plus Bluford, and the pattern of racketeering engaged in by the Count III Defendants, affected interstate commerce.

61.     The Count III Defendants agreed to and did conduct and participate in the conduct of the association-in-fact enterprise through a pattern of racketeering activity, and for the unlawful purpose of conducting business through conspiracy to bribe, wire fraud, and mail fraud by the following unlawful predicate acts, in which the Count III Defendants acted willfully and with actual knowledge of the illegal activities:

(a)     In or about May of 2018, when Defendant Garcetti was the Mayor of the city of Los Angeles, Defendant Garcetti and Defendant Johnson agreed to a bribery scheme in which Defendant Garcetti would be given compensation in exchange for his help with Plaintiff obtaining a contract with the Los Angeles Department of Transportation ("LADOT"). The bribery scheme was that Defendant Garcetti and

20

Defendant Johnson would split 17% of the net revenues Plaintiff would receive through its contract with the LADOT. Defendant Johnson subsequently obtained a Consulting Agreement with Plaintiff in which Defendant Johnson would receive 17% of the net revenues Plaintiff was to receive from any contract Plaintiff obtained with the city of Los Angeles. The agreement by Defendant Garcetti and Defendant Johnson to split 17% of the net revenues constituted a conspiracy between Defendant Garcetti and Defendant Johnson to bribe Defendant Garcetti in violation of the Federal conspiracy statute, 18 U.S.C. §371. Any bribe actually given by Defendant Johnson to Defendant Garcetti would have been in violation of the Federal bribery statute, 18 U.S.C. §666(a), which applies to entities like the city of Los Angeles, which receive benefits of $10,000 or more from Federal programs.

(b)     In furtherance of the bribery scheme of the Count III Defendants described above, in or about July of 2018, with Defendant Garcetti's assistance in obtaining the cooperation of the LADOT, Plaintiff and the LADOT signed a Memorandum of Understanding in which Plaintiff would provide its services to the LADOT and would be amply compensated for its services. The entering into the Memorandum of Understanding by LADOT with Plaintiff was against city policy and procedure, as normally the contract would have had to go into the public procurement process, with the issuance by the LADOT of Requests for Proposals from the public for the services needed. Instead, with Defendant Garcetti's intervention, the LADOT signed a Memorandum of Understanding with Plaintiff, who had not even a submitted a proposal to the LADOT.

(c)     In furtherance of the bribery scheme of the Count III Defendants described above, the Count III Defendants committed multiple violations of 18 U.S.C. §1343, the Federal wire fraud statute. For example, on May 25, 2018, Bluford sent an email to

Borja Leon, the city of Los Angeles Director of Transportation, stating that he (Bluford) was not getting cooperation from the LADOT with respect to Plaintiff's proposed services. On May 25, 2018, Borja Leon replied to Bluford that he would let LADOT know to contact Bluford. On May 25, 2018, Brian Hale, the Chief of Parking, sent an email to Bluford stating that the Mayor's Office wanted the Parking Department to explore possibilities of using Plaintiff's services. On July 11, July 16, July 18, July 26, and July 31, Bluford and Brian Hale exchanged emails with respect to the Memorandum of Understanding that would eventually be entered into by LADOT and Plaintiff. On August 16, 2019, Defendant West sent an email to Bluford stating that Defendant Garcetti was "already on the list". All these emails mentioned in this paragraph were in furtherance of the bribery scheme described above, and each email constitutes wire fraud in violation of 18 U.S.C. §1343.

62.    Pursuant to and in furtherance of their illegal bribery scheme, the Count II Defendants committed multiple related acts of racketeering activity as described in paragraph 61 above, subsections (a) through (c).

63.    The acts of bribery, conspiracy to commit bribery, wire fraud and mail fraud described in detail in paragraph 61 above, subsections (a) through (c), constitute a pattern of racketeering activity pursuant to 18 U.S.C. §1961(5).

64.    The Count III Defendants have directly and indirectly conducted and participated in the conduct of the association-in-fact enterprise's affairs through the pattern of racketeering and activity described in paragraph 61 above, subsections (a) through (c), in violation of 18 U.S.C. §1962(c).

65.     As set forth above in paragraphs 59 through 64, the Count III Defendants agreed and conspired to violate 18 U.S.C. §1962(c). The specific conduct of the Count III Defendants in conspiring to violate 18 U.S.C. §1962(c) is set forth above in paragraphs 59 through 64.

66.     The Count III Defendants have intentionally conspired and agreed to participate in the conduct of the affairs of the association-in-fact enterprise through a pattern of racketeering activity as set forth above in paragraphs 58 through 63. The Count III Defendants knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the bribery scheme as set forth above in paragraphs 59 through 64. That conduct constitutes a conspiracy to violate 18 U.S.C. §1962(c), in violation of 18 U.S.C. §1962(d).

67.     As a direct and proximate result of the Count III Defendants' racketeering activities and violations of 18 U.S.C. §1962(c) as described above, and as a direct and proximate result of the Count II Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy and violations of 18 U.S.C. §1962(d) as described above, Plaintiff has been injured in its business and property as follows:

(a)     Plaintiff has lost all value as a viable company due to the bribery scheme of the Count III Defendants as described above, in that no municipality in the United States will do business with a company that was involved in offering bribes to public officials to secure city contracts. Before the bribery scheme became public knowledge, Plaintiff was valued at $15 Million Dollars. After the bribery scheme became public knowledge, the value of Plaintiff has plummeted to zero.

(b)     Plaintiff expended hundreds of thousands of dollars to develop the platform specifically for the city of Los Angeles. Plaintiff has not been reimbursed for this expenditure.

68.     WHEREFORE, Plaintiff requests the Court to enter judgment against the Count III Defendants as set forth below.

## COUNT IV

### Violation of RICO §1962(c) and §1962(d)

**[Against Defendants Johnson, West, Tubbs and Lopez]**

69.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 68 above as if fully set forth herein.

70.     This Count IV is against Defendants Johnson, West, Tubbs and Lopez (the "Count IV Defendants"). The Count IV Defendants, along with Bluford, comprised the association-in-fact enterprise with respect to the city of Stockton, California.

71.     At all relevant times mentioned herein, Plaintiff was engaged in interstate commerce and Plaintiff's activities affected interstate commerce in that Plaintiff offered its services to municipalities in various states. In addition, the association-in-fact enterprise consisting of the Count IV Defendants, plus Bluford, and the pattern of racketeering engaged in by the Count IV Defendants, affected interstate commerce.

72.     The Count IV Defendants agreed to and did conduct and participate in the conduct of the association-in-fact enterprise through a pattern of racketeering activity, and for the unlawful purpose of conducting business through conspiracy to bribe, wire

24

fraud, and mail fraud by the following unlawful predicate acts, in which the Count IV Defendants acted willfully and with actual knowledge of the illegal activities:

(a)     In January of 2018, Defendant Tubbs, Defendant Johnson, Defendant Lopez and Bluford agreed in a telephone call to give Plaintiff a contract from the city of Stockton for parking enforcement in exchange for a revenue kickback to Defendant Tubbs, where Defendant Johnson and Defendant Tubbs would split the 10% of Plaintiff's revenues generated by the contract with the city of Stockton. This 10% was what Defendant Johnson was to receive through his Consulting Agreement with Plaintiff referenced above.

(b)     On October 29, 2019, when Defendant Tubbs was the Mayor of the city of Stockton, Defendant Tubbs and Defendant Lopez were on a telephone call with Defendant Johnson and Bluford. In that telephone call, Defendants Tubbs, Lopez, Johnson and Bluford all agreed on a "quid pro quo" deal for Plaintiff to obtain a contract with the city of Stockton, and in return Defendant Tubbs would receive money from Defendant Johnson. Defendant Lopez agreed to facilitate the quid pro quo bribery arrangement between Defendant Tubbs and Defendant Johnson and Bluford. As part of the quid pro quo arrangement, Defendant Tubbs also agreed to give false references for Plaintiff by telling other cities who called for references that the city of Stockton was in contract with Plaintiff and that Plaintiff was giving good services to the city, when in fact the city of Stockton was not in contract with Plaintiff. Defendant Tubbs did give a false reference for Plaintiff as part of the quid pro quo arrangement.

(c)     On February 6, 2020, Defendant Tubbs told Bluford that the city of

25

Stockton would give a contract to Plaintiff in return for campaign contributions to Defendant Tubbs' re-election campaign. The amount discussed by Defendant Tubbs and Bluford was $35,000, to be provided by Defendant Johnson and Bluford. The agreements made on October 29, 2019 and on February 6, 2020 between Defendant Tubbs and Defendant Johnson for Defendant Johnson to give money to Defendant Tubbs' re-election campaign in return for a city contract to Plaintiff, and in return for Defendant Tubbs giving false references for Plaintiff constituted a conspiracy between Defendant Tubbs and Defendant Johnson to bribe Defendant Tubbs in violation of the Federal conspiracy statute, 18 U.S.C. §371. Any bribe actually given by Defendant Johnson to Defendant Tubbs would have been in violation of the Federal bribery statute, 18 U.S.C. §666(a), which applies to entities like the city of Stockton, which receive benefits of $10,000 or more from Federal programs. Before any bribe could be paid to Defendant Tubbs, Bluford's role as a CHS with Defendant FBI was terminated.

(d)     In furtherance of the bribery scheme of the Count IV Defendants described above, the Count IV Defendants committed multiple violations of 18 U.S.C. §1343, the Federal wire fraud statute, by sending various emails. For example, on January 29, 2020, Defendant Lopez sent an email to Cameron Burns, an employee of the city of Stockton, stating that Bluford and Defendant Johnson were looking to meet with Defendant Tubbs and requested suitable times for the meeting. On February 22, 2018, Defendant Lopez sent an email to Bluford offering his help. On December 2, 2019, Defendant Johnson sent an email to Bluford mentioning Defendant Tubbs as a person who Bluford should contact, and Bluford replied to Defendant Johnson's email. All these emails mentioned

in this paragraph were in furtherance of the bribery scheme described above, and each email constitutes wire fraud in violation of 18 U.S.C. §1343.

(e)     In furtherance of the bribery scheme of the Count IV Defendants described above, the Count IV Defendants committed multiple violations of 18 U.S.C. §1343, the Federal wire fraud statute, by exchanging multiple text messages. For example, in February of 2018, Bluford sent a text message to Defendant Lopez setting forth a false reference for Plaintiff that Defendant Lopez could give to the City of New Haven, who had contacted Defendant Lopez for a reference for Plaintiff. On February 15, 2018, Defendant Lopez replied to Bluford's text message about the false reference by stating "That works sorry for the delay". On April 11, 2018 Bluford sent a text message to Defendant Lopez inquiring whether the City of New Haven had contacted Defendant Lopez regarding a reference for Plaintiff. On April 12, 2018 Defendant Lopez replied to Bluford's text by asking if Bluford was available to talk. There were more text exchanges between Bluford and Defendant Lopez in furtherance of the bribery scheme described above on May 16, 2018 and April 17, 2019. There were also other text exchanges among Defendant Tubbs, Defendant Lopez, Defendant Johnson and Bluford in furtherance of the bribery scheme described above. All these text messages mentioned in this paragraph were in furtherance of the bribery scheme described above, and each text message constitutes wire fraud in violation of 18 U.S.C. §1343.

73.     Pursuant to and in furtherance of their illegal bribery scheme, the Count IV Defendants committed multiple related acts of racketeering activity as described in paragraph 72 above, subsections (a) through (e).

27

74.    The acts of conspiracy to commit bribery, wire fraud and mail fraud described in detail in paragraph 72 above, subsections (a) through (e), constitute a pattern of racketeering activity pursuant to 18 U.S.C. §1961(5).

75.    The Count IV Defendants have directly and indirectly conducted and participated in the conduct of the association-in-fact enterprise's affairs through the pattern of racketeering and activity described in paragraph 72 above, subsections (a) through (e), in violation of 18 U.S.C. §1962(c).

76.    As set forth above in paragraphs 70 through 75, the Count IV Defendants agreed and conspired to violate 18 U.S.C. §1962(c). The specific conduct of the Count III Defendants in conspiring to violate 18 U.S.C. §1962(c) is set forth above in paragraphs 70 through 75.

77.    The Count IV Defendants have intentionally conspired and agreed to participate in the conduct of the affairs of the association-in-fact enterprise through a pattern of racketeering activity as set forth above in paragraphs 70 through 75. The Count IV Defendants knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the bribery scheme as set forth above in paragraphs 70 through 75. That conduct constitutes a conspiracy to violate 18 U.S.C. §1962(c), in violation of 18 U.S.C. §1962(d).

78.    As a direct and proximate result of the Count IV Defendants' racketeering activities and violations of 18 U.S.C. §1962(c) as described above, and as a direct and proximate result of the Count II Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy and violations of 18 U.S.C. §1962(d) as described above,

Plaintiff has been injured in its business and property as follows:

(a)     Plaintiff has lost all value as a viable company due to the bribery scheme of the Count III Defendants as described above, in that no municipality in the United States will do business with a company that was involved in offering bribes to public officials to secure city contracts. Before the bribery scheme became public knowledge, Plaintiff was valued at $15 Million Dollars. After the bribery scheme became public knowledge, the value of Plaintiff has plummeted to zero.

(b)     Plaintiff expended a substantial sum of money to develop the platform specifically for the city of Stockton. Plaintiff has not been reimbursed for this expenditure.

79.     WHEREFORE, Plaintiff requests the Court to enter judgment against the Count IV Defendants as set forth below.

## COUNT V FOR FEDERAL CIVIL RIGHTS VIOLATIONS

### [Against Defendants Anderson, Bills and LaChapelle]

80.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 79 above as if fully set forth herein.

81.     **JURISDICTION.**  Plaintiff brings this civil rights claim pursuant to 42 U.S.C. §1983 to redress the deprivation by Defendants Anderson, Bills and LaChapelle, acting under color of state law, of property rights secured to Plaintiff under the Fifth Amendment to the United States Constitution. At all times mentioned herein, Defendant Anderson was employed as an Assistant U.S. Attorney by Defendant U.S. Attorney's Office and Defendants Bills and LaChapelle were employed by Defendant FBI as

Special Agents.

82.   **Jurisdiction** is conferred on this Court by 28 U.S.C. §§ 1343, 1343(3) and 1343(4), which provide for original jurisdiction in this Court of all suits brought pursuant to 42 U.S.C. §1983.   Jurisdiction is also conferred by 28 U.S.C. § 1331(a) because Plaintiff's claims for relief derive from the United States Constitution and laws of the United States.

83.   **Intradistrict Assignment.**   Venue properly lies in the Eastern District of California, pursuant to 28 U.S.C. §§1391 and 1392, in that a substantial amount of the events or omissions giving rise to the claims alleged herein occurred in the Eastern District of California in the Counties of Placer, Sacramento and San Joaquin, California. In addition, a number of the defendants sued herein, including employees and officers of Defendants FBI and U.S. Attorney's Office, acting in their official capacity and under color of legal authority, reside in and/or are employed in the Eastern District of California.

84.   This Count V is against Defendants Anderson, Bills and LaChapelle (the "Count V Defendants"). This claim arises out of the United States Constitution, and particularly under the provisions of the Fifth Amendment to the United States Constitution, and under Federal law, particularly §1983 of Title 42 of the United States Code.   The  acts of the Count V Defendants described herein were done by said Defendants, and each of them, not only as individuals, but under the color and pretense of the statutes, ordinances, regulations, customs, policy and usages of the United States of America, and under its authority.

85.   At all relevant times mentioned herein, Plaintiff's business was providing

a crowdsourcing platform with software and technical support to municipalities throughout the United States in order to increase road safety, to reduce distracted driving incidents, to issue and collect parking citations, and to generally improve community living conditions through Plaintiff's crowdsourcing platform.

86.     In or about January of 2018, Plaintiff entered into an oral contract with Bluford for Bluford to communicate with, and to obtain contracts with, municipalities to utilize the platform created by Plaintiff for various municipal functions, such as parking enforcement and other city services. The essential terms of the oral contract between Plaintiff and Bluford were as follows: Bluford was to communicate with, and to obtain contracts with, various municipalities in the United States to utilize Plaintiff's platform and services, and Plaintiff would compensate Bluford for his services depending on the size of the contract that Bluford obtained for Plaintiff. Bluford's relationship with Plaintiff was that of an independent contractor.

87.     On or about July 1 2018, Bluford, as the independent contractor for Plaintiff, entered into a written "Consulting Agreement" with Defendant Johnson to market Plaintiff's services to include the cities of Los Angeles, California; Phoenix, Arizona; and New Haven, Connecticut. At the time Defendant Johnson entered the Consulting Agreement with Plaintiff, Defendant Johnson had the intention to willingly, knowingly and illegally bribe the mayors of those cities in order to obtain contracts for Plaintiff. Plaintiff was never aware of Defendant Johnson's bribery scheme at any time when the bribery scheme was being implemented, and Plaintiff only became aware of

the bribery scheme when Bluford published a book in October of 2020 entitled *The Mighty Have Fallen*.

88.     On January 11, 2018, Defendant U.S. Attorney's Office issued a criminal indictment against Bluford for Wire Fraud and Monetary Transaction Involving Criminally Derived Funds.

89.     In or about October of 2018, Bluford and Defendant U.S. Attorney's Office began exploring ways for Bluford to assist Defendant U.S. Attorney's Office in the investigation of public corruption. Eventually, Bluford became a Confidential Human Source ("CHS") for Defendant FBI, with the goal of investigating public corruption using Bluford as the point man in Defendant FBI's sting operations. In these sting operations conducted by Defendant FBI under the direction of Defendant U.S. Attorney's Office, Bluford was instructed by Defendant FBI to offer and deliver bribes to mayors and municipal employees in return for securing contracts for Plaintiff's services. Neither Defendant FBI, nor Defendant U.S. Attorney's Office, nor any of the Count V Defendants, ever at any time informed Plaintiff that Plaintiff would be used as the company on behalf of whom the bribes would be offered in the sting operations, and neither Defendant FBI, nor Defendant U.S. Attorney's Office, nor any of the Count V Defendants, ever obtained the consent of Plaintiff for Plaintiff to be used in the sting operations as the company on behalf of whom the bribes would be offered. Plaintiff only became aware of the sting operations when Bluford published a book in October of 2020 entitled *The Mighty Have Fallen*.

90.     The Fifth Amendment to the United States Constitution states in relevant part as follows:

"No person shall be ….. deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

91.     By conducting the sting operations and using Plaintiff as the company on whose behalf bribes were being offered by CHS Bluford to corrupt politicians and their staff, as described above in paragraphs 27 through 77, and in doing so without Plaintiff's knowledge or consent, the Count V Defendants: (1) have violated Plaintiff's property rights under the Fifth Amendment by taking Plaintiff's private property for the public use of investigating public corruption, without just compensation to Plaintiff; and (2) have violated Plaintiff's property rights under the Fifth Amendment by appropriating and taking Plaintiff's private property without due process of law.

92.     As a direct and proximate result of the Count V Defendants' violations of Plaintiff's property rights under the Fifth Amendment to the United States Constitution as described above, Plaintiff has been injured in its business and property as follows:

(a)     Plaintiff has lost all value as a viable company due to the Count V Defendants' sting operations as described above, in that no municipality in the United States will do business with a company that has been involved in offering bribes to public officials to secure city contracts. Before Defendants' sting operations became public knowledge, Plaintiff was valued at $15 Million Dollars. After Defendants' sting

33

operations became public knowledge, the value of Plaintiff has plummeted to zero.

(b)    Plaintiff expended hundreds of thousands of dollars to develop the platforms and software specifically for the cities of New Haven, Phoenix, Los Angeles and Stockton, expenditures for which Plaintiff has never been reimbursed.

93.    WHEREFORE, Plaintiff requests the Court to enter judgment against the Count V Defendants as set forth below.

## COUNT VI FOR NEGLIGENCE

### [Against Defendants U.S. Attorney's Office, FBI,

### Anderson, Bills and LaChapelle]

94.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 93 above as if fully set forth herein.

95.    This Count VI for negligence is against Defendants U.S. Attorney's Office, FBI, Anderson, Bills and LaChapelle (the "Count VI Defendants").

96.    At all times mentioned herein, Defendant Anderson was the employee of Defendant U.S. Attorney's Office, and in doing the things herein alleged, was acting in the scope and course of his employment with Defendant U.S. Attorney's Office and in his official capacity as an Assistant U.S. Attorney. As Defendant Anderson's employer, and under the doctrine of *respondeat superior*, Defendant U.S. Attorney's Office is legally responsible for the conduct, damages and injuries caused to Plaintiff by Defendant Anderson.

97.    At all times mentioned herein, Defendants Bills and LaChapelle were the

employees of Defendant FBI, and in doing the things herein alleged, were acting in the scope and course of their employment with Defendant FBI and in their official capacity as FBI Special Agents. As Defendants Bills and LaChapelle's employer, and under the doctrine of *respondeat superior*, Defendant FBI is legally responsible for the conduct, damages and injuries caused to Plaintiff by Defendants Bills and LaChapelle.

98.     In utilizing Plaintiff in its sting operations as described in paragraphs 28 through 78 above, the Count VI Defendants had a duty of care to Plaintiff not to harm or injure Plaintiff in any way when using Plaintiff in Defendant FBI's sting operations. The Count VI Defendants violated their duty of care to Plaintiff, and were negligent with respect to Plaintiff, by the following acts and omissions:

(a)     The Count VI Defendants failed to inform Plaintiff that they were going to use Plaintiff in its sting operations described in paragraphs 28 through 78 above.

(b)      The Count VI Defendants failed to obtain the consent of Plaintiff to use Plaintiff in its sting operations described in paragraphs 28 through 78 above.

(c)     The Count VI Defendants knew, or should have reasonably known, that using Plaintiff in its sting operations, as described in paragraphs 28 through 78 above, would harm and injure Plaintiff in its business and its property in that no municipality would want to do business with Plaintiff once it became public knowledge that Plaintiff was the company in Defendant FBI's sting operations on whose behalf the bribes were offered given to the corrupt politicians and/or their staff. Thus, the harm caused by the Count VI Defendants' conduct as described above was foreseeable and likely.

99.     Plaintiff's damages and injuries occurred, and Plaintiff first became aware

of the Count VI Defendants' role in causing those injuries and damages to Plaintiff, when Bluford published his book *The Mighty Have Fallen* in October of 2020, and Plaintiff's role in the Count VI Defendants' sting operations was made public.

100.   In committing the conduct, acts and omissions described in paragraph 98 above, the Count VI Defendants violated their duty of care toward Plaintiff, were negligent with respect to Plaintiff, and were the legal and proximate cause of damages to Plaintiff.

101.   As a proximate result of the Count VI Defendants' conduct and their actions and omissions described in paragraph 98 above, Plaintiff suffered damages and injuries as follows:

(a)      Plaintiff has lost all value as a viable company due to the negligence of the Count VI Defendants as described above, in that no municipality in the United States will do business with a company that was involved in offering and giving bribes to public officials to secure city contracts. Before the bribery scheme became public knowledge, Plaintiff was valued at $15 Million Dollars. After the bribery scheme became public knowledge, the value of Plaintiff has plummeted to zero. Thus, Plaintiff has suffered general damages in the amount of $15 Million Dollars as a proximate and direct result of the Count VI Defendants' negligence as described herein.

(b)      Plaintiff expended substantial sums of money to develop the platforms and software specifically for the cities of New Haven, Phoenix, Los Angeles and Stockton. These expenditures include the sum of $150,000 Plaintiff spent pursuant to Plaintiff's contract with the City of New Haven. Plaintiff has not been reimbursed for any of these expenditures. Thus, Plaintiff has suffered special damages in an amount to be established

by proof at trial as a proximate and direct result of the Count VI Defendants' negligence as described herein.

102.    WHEREFORE, Plaintiff requests the Court to enter judgment against the Count VI Defendants as set forth below.

## COUNT VII FOR BREACH OF CONTRACT

### [Against Defendant Johnson]

103.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 102 above as if fully set forth herein.

104.    On December 31, 2019 Defendant Johnson and Plaintiff entered into an agreement entitled "Shareholder Protection Agreement". A true and correct copy of the Shareholder Agreement is attached hereto as Exhibit A.

105.    As part of the Shareholder Protection Agreement, Plaintiff and Defendant Johnson made the following agreement:

"Neither the Company nor the Shareholder shall take any action, or engage in any conduct, directly or indirectly, that would result in the Company's value being diminished, or that would cause any monetary or any other damages to the Company."

"The Company and the Shareholder agree and acknowledge that they each have the following mutual responsibilities:

a.    To refrain from taking any action, and to refrain from engaging in any conduct, that would directly or indirectly cause or result in the Company's value being diminished, or that would directly or indirectly cause any monetary or any other damages to the Company."

106.    The Shareholder Protection Agreement signed by Defendant Johnson also stated as follows:

37

"The Company and the Shareholder hereby agree and warrant that should either of them breach any of their mutual responsibilities as set forth above, including taking any action, or engaging in any conduct, directly or indirectly, that would result in the Company's value being diminished, or that would cause, directly or indirectly, any monetary or any other damages to the Company, then the Company and the Shareholder hereby agree as follows:

a.      If the violating party is the Company, then the person or persons in the Company who have violated his or her responsibilities as set forth above shall pay monetary damages to the Company in the amount that the Company has lost value, and he or she shall also pay to the Company the amount that the Company has suffered in monetary damages as a result of the violating party's conduct or actions.

b.      If the violating party is the Shareholder, then the Shareholder who has violated his or her responsibilities as set forth above shall pay monetary damages to the Company in the amount that the Company has lost value, and he or she shall also pay to the Company the amount that the Company has suffered in monetary damages as a result of the violating party's conduct or actions."

107.    Plaintiff has performed all the conditions, covenants, and promises required on Plaintiff's part to be performed in accordance with the terms and conditions of the Shareholder Protection Agreement with Defendant Johnson, except those obligations that Plaintiff was prevented or excused from performing.

108.    On various dates as described above, and all within the past four years, Defendant Johnson has breached the Shareholder Protection Agreement by engaging in bribery schemes and by conducting four association-in-fact enterprises through a pattern of racketeering activity for the unlawful purpose of conducting business through bribes, conspiracy to bribe, wire fraud, and mail fraud, all as described above in paragraphs 26 through 78.

109.    As a proximate and direct result of Defendant Johnson's breach of the

Shareholder Protection Agreement as described above, Plaintiff has lost all value as a viable company, in that no municipality in the United States will do business with a company that was involved in offering and giving bribes to public officials to secure city contracts. Before the bribery scheme became public knowledge, Plaintiff was valued at $15 Million Dollars. After the bribery scheme became public knowledge, the value of Plaintiff has plummeted to zero. Thus, Plaintiff has suffered general damages in the amount of $15 Million Dollars as a proximate and direct result of Defendant Johnson's breach of the Shareholder Protection Agreement.

110. As a further proximate and direct result of Defendant Johnson's breach of the Shareholder Protection Agreement as described above, Plaintiff has suffered special damages for the hundreds of thousands of dollars Plaintiff expended to develop the platforms and software specifically for the cities of New Haven, Phoenix, Los Angeles and Stockton, in an amount to be established by proof at trial.

111. On January 24, 2020, Defendant Johnson entered into a written Common Stock Purchase Agreement with Plaintiff in which Defendant Johnson purchased an additional 100,000 shares of Plaintiff's common stock. A true and correct copy of the Common Stock Purchase Agreement is attached hereto as Exhibit B

112. In the Common Stock Purchase Agreement is the following agreement made by Defendant Johnson and Plaintiff:

"The Purchaser agrees that the current valuation of the Company is $15,000,000 (Fifteen Million Dollars)…."

113. Thus, by his own agreement, Defendant Johnson has acknowledged that

Plaintiff's value as a company was $15 Million Dollars as of January 24, 2020, which was before Defendant Johnson's bribery schemes became public knowledge and Plaintiff's value as a company plummeted to zero.

114.   WHEREFORE, Plaintiff requests the Court to enter judgment against Defendant Johnson as set forth below.

## COUNT VIII FOR BREACH OF CONTRACT

### [Against Defendant New Haven]

115.   Plaintiff re-alleges and incorporates by reference paragraphs 1 through 114 above as if fully set forth herein.

116.   On or about December 30, 2019, Plaintiff and Defendant New Haven entered into a written contract ("the Contract") for Plaintiff to provide certain services through its internet platform, such as parking and curbside management, in return for compensation by Defendant New Haven. A true and correct copy of the contract is attached hereto as Exhibit C.

117.   Plaintiff entered into the Contract in good faith and did not know or suspect that the Contract had been obtained through public corruption committed by Defendants Harp, Jones, Scott and Johnson, as described above in Count I of this Complaint.

118.   Plaintiff, in good faith, expended out-of-pocket costs in the amount of $150,000 pursuant to its obligations under the Contract.

119.   In or about February of 2020, Defendant FBI informed Plaintiff and

40

Defendant New Haven that the Contract had not been entered into "in good faith", but Defendant FBI did not explain what was meant by saying that the Contract had not been entered into "in good faith".

120.    Thereafter, Defendant New Haven canceled the Contract in a letter to Plaintiff's counsel dated March 12, 2020.

121.    The Contract required Defendant New Haven to reimburse Plaintiff for any and all out-of-pocket costs Plaintiff incurred before the Contract was canceled. Plaintiff had incurred out-of-pocket costs in the amount of $150,000 in January of 2020, well before Defendant New Haven canceled the Contract. Despite demands by Plaintiff for Defendant New Haven to pay Plaintiff the $150,000 in out-of-pocket costs, Defendant New Haven has failed and refused to pay those costs.

122.    Plaintiff has performed all the conditions, covenants, and promises required on Plaintiff's part to be performed in accordance with the terms and conditions of the Contract with Defendant New Haven, except those obligations that Plaintiff was prevented or excused from performing.

123.    Defendant New Haven breached the Contract on March 12, 2020 and thereafter by failing and refusing to pay the $150,000 in out-of-pocket costs that it owes to Plaintiff, despite numerous demands by Plaintiff for payment.

124.    As a proximate and direct result of Defendant New Haven's breach of the Contract by failing and refusing to pay Plaintiff the $150,000 in out-of-pocket costs as required by the Contract, Plaintiff has suffered damages in the amount of $150,000.

125.    WHEREFORE, Plaintiff requests the Court to enter judgment against

Defendant New Haven as set forth below.

## COUNT IX FOR FRAUD

### [Against Defendants Bills and Lund]

126. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 125 above as if fully set forth herein.

127. This Count IX for fraud is against Defendants Bills and Lund .

128. In November or December of 2019, Defendant Bills directed Defendant Lund to pretend to be a buyer interested in purchasing or licensing Plaintiff's software. Pursuant to Defendant Bills' direction, Defendant Lund represented himself to Plaintiff as an employee of an agency of the State of California who was interested in purchasing or licensing Plaintiff's software for the State of California.

129. In December of 2019, Defendant Lund made the following false representations to Plaintiff by emails and by texts that he sent to Plaintiff and to Bluford: Defendant Lund falsely represented that the State of California was interested in purchasing or licensing Plaintiff's software for its own use, and that he was authorized to negotiate a price for the purchase or licensing of Plaintiff's software on behalf of the State of California. These representations were false at the time Defendant Lund made the representations to Plaintiff and to Bluford, and Defendant Lund knew at the time he made the representations that the representations were false. In furtherance of Defendants Bills and Lund's scheme to defraud Plaintiff of Plaintiff's software, Defendants Bills and Lund provided a template purchasing agreement and a template

licensing agreement to Bluford to give to Plaintiff for Plaintiff's review. Plaintiff did in fact have its legal counsel review these template agreements.

130.    Believing and relying on Defendant Lund's false representations that the State of California wanted to purchase or license Plaintiff's software and that Defendant Lund was authorized to negotiate a deal with Plaintiff, at Defendant Lund's request Plaintiff provided a complete copy of Plaintiff's software to Defendant Lund for "testing" and "authenticating".

131.    Defendant Lund made the false representations described above to Plaintiff so that Defendant FBI could obtain a copy of Plaintiff's software without paying for the software. Neither the State of California, nor Defendants Bills or Lund, at any time have any intention of purchasing or licensing Plaintiff's software, but Defendants Bills and Lund merely wanted to defraud Plaintiff of its software.

132.    Had Plaintiff known that the representations made by Defendant Lund that the State of California wanted to purchase or license Plaintiff's software and that Defendant Lund was authorized to negotiate a deal with Plaintiff were false representations, Plaintiff would not have provide a copy of its software to Defendant Lund.

133.    Defendant FBI wanted a copy of Plaintiff's software to use in other sting operations involving bribery and public corruption so that Defendant FBI could offer an authenticate "sample" of software it was marketing to the targets of its investigations.

134.    As a proximate and direct result of Defendants Bills and Lund's fraud as described above, Plaintiff has suffered general and special damages in an amount to be

established by proof at trial.

135.    The conduct of Defendants Bills and Lund in defrauding Plaintiff as described above was oppressive and fraudulent and Plaintiff is entitled to an award of punitive damages against Defendants Bills and Lund.

136.    WHEREFORE, Plaintiff requests the Court to enter judgment against Defendant New Haven as set forth below.

WHEREFORE, Plaintiff GOVERNMENT APP SOLUTIONS, INC. prays for judgment against Defendants as follows:

## COUNT I FOR RICO CIVIL VIOLATIONS

### [Against Defendants Kevin Johnson, Nicole West, Toni Harp and Daryl Jones]

1.    For the total loss of Plaintiff's $15 Million Dollars value as a viable company, Plaintiff requests treble damages in the amount of $45 Million Dollars.

2.    For the $150,000 out-of-pocket costs incurred by Plaintiff pursuant to its contract with Defendant New Haven, Plaintiff requests treble damages in the amount of $450,000.

3.    For the several hundreds of thousands of dollars Plaintiff expended to develop the platform for its contract with Defendant New Haven, Plaintiff requests a judgment of treble damages according to proof at trial.

4.    For reasonable attorney's fees and costs according to proof at trial in bringing and prosecuting this action.

5.    For costs of suit incurred herein.

44

6.      For such other and further relief as the Court deems just and proper.

## COUNT II

### Violations of RICO §1962(c) and §1962(d)

**[Against Defendants Kevin Johnson, Nicole West**

**and Gregory J. Stanton]**

7.      For the total loss of Plaintiff's $15 Million Dollars value as a viable company, Plaintiff requests treble damages in the amount of $45 Million Dollars.

8.      For the sums of money Plaintiff expended to develop the platform specifically for the city of Phoenix in an amount to be established by proof at trial. Plaintiff requests treble of these damages according to proof at trial.

9.      For reasonable attorney's fees and costs according to proof at trial in bringing and prosecuting this action.

10.      For costs of suit incurred herein.

11.      For such other and further relief as the Court deems just and proper.

## COUNT III

### Violation of RICO §1962(c) and §1962(d)

**[Against Defendants Kevin Johnson, Nicole West and Kevin Garcetti]**

12.      For the total loss of Plaintiff's $15 Million Dollars value as a viable company, Plaintiff requests treble damages in the amount of $45 Million Dollars.

13.      For the sums of money Plaintiff expended to develop the platform specifically for the city of Los Angeles in an amount to be established by proof at trial.

Plaintiff requests treble of these damages according to proof at trial.

14.    For reasonable attorney's fees and costs according to proof at trial in bringing and prosecuting this action.

15.    For costs of suit incurred herein.

16.    For such other and further relief as the Court deems just and proper.

## COUNT IV

### Violation of RICO §1962(c) and §1962(d)

**[Against Defendants Kevin Johnson, Nicole West,**

**Michael Tubbs and Daniel Lopez]**

17.    For the total loss of Plaintiff's $15 Million Dollars value as a viable company, Plaintiff requests treble damages in the amount of $45 Million Dollars.

18.    For the sums of money Plaintiff expended to develop the platform specifically for the city of Stockton in an amount to be established by proof at trial. Plaintiff requests treble of these damages according to proof at trial.

19.    For reasonable attorney's fees and costs according to proof at trial in bringing and prosecuting this action.

20.    For costs of suit incurred herein.

21.    For such other and further relief as the Court deems just and proper.

### COUNT V FOR FEDERAL CIVIL RIGHTS VIOLATIONS

**[Against Defendants Michael Anderson,**

**Rebecca Bills and Rachel LaChapelle]**

22.    For general damages in the amount of $15 Million Dollars as just

46

compensation to Plaintiff for the Count V Defendants' taking of Plaintiff's property for public use without just compensation, and causing the total loss of Plaintiff's value as a viable company.

23.     For general damages in the amount of $15 Million Dollars as just compensation for the taking of Plaintiff's property without due process of law.

24.     Special damages for the hundreds of thousands of dollars Plaintiff expended to develop the platforms and software specifically for the cities of New Haven, Phoenix, Los Angeles and Stockton, in an amount to be established by proof at trial.

25.     For reasonable attorney's fees and costs according to proof at trial in bringing and prosecuting this claim.

26.     For costs of suit incurred herein.

27.     For such other and further relief as the Court deems just and proper.

## COUNT VI FOR NEGLIGENCE

**[Against Defendants U.S. Attorney's Office, FBI,**

**Michael Anderson, Rebekah Bills and Rachel LaChapelle]**

28.     For general damages in the amount of $15 Million Dollars.

29.     For special damages in an amount to be established by proof at trial.

30.     For costs of suit incurred herein.

31.     For such other and further relief as the Court deems just and proper.

## COUNT VII FOR BREACH OF CONTRACT

**[Against Defendant Kevin Johnson]**

32.     For general damages in the amount of $15 Million Dollars.

33.     For special damages in an amount to be established by proof at trial.

34.     For costs of suit incurred herein.

35.     For such other and further relief as the Court deems just and proper.

### COUNT VIII FOR BREACH OF CONTRACT

### [Against Defendant City of New Haven]

36.     For damages in the amount of $150,000.

37.     For costs of suit incurred herein.

38.     For such other and further relief as the Court deems just and proper.

### COUNT IX FOR FRAUD

### [Against Defendants Rebekah Bills and Casey Lund]

39.     For general damages in the amount to be established by proof at trial.

40.     For special damages in an amount to be established by proof at trial.

41.     For punitive damages in an amount to be established by proof at trial.

42.     For costs of suit incurred herein.

43.     For such other and further relief as the Court deems just and proper.

Cyrus Zal, A Professional Corporation

DATED: April 18, 2021            By:            /s/ Cyrus Zal
                                 CYRUS ZAL, Attorney for Plaintiff
                                 GOVERNMENT APP SOLUTIONS, INC.