UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GOVERNMENT APP SOLUTIONS, INC.,

Plaintiff,

v.

CITY OF NEW HAVEN, et al.,

Defendants.

No. 2:21-cv-00696-DAD-KJN

ORDER GRANTING, IN PART, MOTIONS TO DISMISS BY DEFENDANTS GARCETTI, JOHNSON, WEST, HARP, JONES, SCOTT, TUBBS, LOPEZ, AND STANTON, AND DENYING DEFENDANT LUND'S MOTION TO DISMISS AS HAVING BEEN RENDERED MOOT

(Doc. Nos. 136, 137, 142, 146, 147, 148, 149, 150, 161)

This matter is before the court on nine pending motions to dismiss filed on behalf of defendants Kevin M. Johnson, Nicole West, Toni Harp, Daryl Jones, Michael Tubbs, Daniel Lopez, Eric Garcetti, Gregory J. Stanton, and Casey Lund. (Doc. Nos. 136, 137, 142, 146, 147, 148, 149, 150, 161.) On October 11, 2022, defendants' motions were taken under submission on the papers.[1] (Doc. No. 151.) For the reasons explained below, the court will grant motions to dismiss brought on behalf of defendants Garcetti, Johnson, West, Harp, Jones, Scott, Tubbs,

/////

[1] On August 25, 2022, this case was reassigned to the undersigned. (Doc. No. 126.)

Lopez, and Stanton, in part, and deny the motion to dismiss brought on behalf of defendant Lund as having been rendered moot.

**BACKGROUND**

In its second amended complaint ("SAC"), plaintiff alleges as follows.[2] Plaintiff is a corporation that "provid[es] a crowdsourcing platform with software and technical support to municipalities throughout the United States in order to increase road safety, to reduce distracted driving incidents, to issue and collect parking citations, and to generally improve community living conditions." (Doc. No. 1 at ¶¶ 1, 18.) In January 2018, plaintiff entered into an oral agreement with Derek Bluford whereby Bluford would communicate and contract with municipalities to use plaintiff's platform for various municipal functions. (*Id.* at ¶ 19.) In return, plaintiff would compensate Bluford for his services depending on the size of the contract Bluford obtained for plaintiff. (*Id.*)

On July 1, 2018, Bluford entered into a written consulting agreement (the "Consulting Agreement") with defendant Johnson, the then-mayor of Sacramento. (*Id.* at ¶ 20.) Pursuant to that agreement, defendant Johnson agreed to market plaintiff's services to the cities of Los Angeles, California; Phoenix, Arizona; and New Haven, Connecticut in exchange for a percentage of the revenue plaintiff would generate from any contracts entered into with those municipalities. (*Id.*) Unbeknownst to plaintiff, defendant Johnson intended to bribe the then-mayors of Los Angeles, Phoenix, and New Haven—defendants Garcetti, Stanton, and Harp, respectively—in order to secure such contracts. (*Id.*)

Also without plaintiff's knowledge, in January 2018, Bluford was indicted for wire fraud and engaging in a monetary transaction involving criminally derived funds. (*Id.* at ¶ 21.) In October 2018, Bluford began cooperating with the United States Attorney's Office in connection with an investigation of public corruption. (*Id.* at ¶ 22.) As part of this cooperation, Bluford was

---

[2] The court emphasizes that the factual background described herein is derived solely from plaintiff's SAC. For the purposes of ruling on the pending motions to dismiss pursuant to Rule 12(b)(6), the court "accept[s] all factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). Of course, the court takes no opinion as to the veracity of plaintiff's allegations.

instructed to assist with sting operations conducted by the Federal Bureau of Investigation ("FBI"). (*Id.*) The FBI directed Bluford to "offer and deliver bribes to mayors and municipal employees in return for securing contracts for [p]laintiff's services." (*Id.*) In addition, in December 2019, defendant Lund, an independent contractor for the FBI, falsely represented to plaintiff that the state of California was interested in purchasing or licensing plaintiff's software. (*Id.* at ¶¶ 99, 101.) According to plaintiff, defendant Lund did so because the FBI "wanted a copy of [p]laintiff's software to use in other sting operations involving bribery and public corruption." (*Id.* at ¶ 103.) The FBI and United States Attorney's Office did not tell plaintiff about these sting operations or obtain plaintiff's consent to be used in the sting operations. (*Id.* at ¶ 22.)

Pursuant to Bluford's and defendant Johnson's Consulting Agreement, defendant Johnson arranged for Bluford to send cash bribes to certain city officials, with such bribes to be disguised as contributions to the city officials' re-election campaigns. (*Id.* at ¶ 25.) Bluford delivered cash bribes or arranged for online payments to defendants Harp and Stanton. (*Id.*) In addition, defendant Tubbs (the then-mayor of Stockton, California) agreed to receive a bribe, but Bluford's cooperation role with the FBI terminated before the bribe could be delivered to defendant Tubbs. (*Id.*) With respect to defendant Garcetti (the then-mayor of Los Angeles), plaintiff alleges that defendant Garcetti agreed to receive a bribe in exchange for helping secure a contract between plaintiff and the Los Angeles Department of Transpiration. (*Id.* at ¶ 57.) Thus, in total, plaintiff alleges that the then-mayors of these four cities received bribes or agreed to receive bribes, which comprised four different association-in-fact enterprises. (*Id.* at ¶ 26.) According to plaintiff, Bluford, defendant Johnson, and defendant West—who plaintiff describes as defendant Johnson's "assistant in conducting the bribery schemes"—were members of all four alleged association-in-fact enterprises, while the other members of these enterprises were unique to each of the four cities of New Haven, Phoenix, Los Angeles, and Stockton. (*Id.* at ¶¶ 22, 26.) Plaintiff alleges that other members of these enterprises included defendant Jones, who served as Controller for the City of New Haven; defendant Scott, who served as Executive Assistant to defendant Harp; and defendant Lopez, who served as senior advisor to defendant Tubbs. (*Id.* at ¶¶ 8, 9, 11.)

/////

Around February of 2020, the FBI informed plaintiff that plaintiff's contract with the City of New Haven had not been obtained "in good faith," but did not explain further or inform plaintiff of its sting operations. (*Id.* at ¶ 24.) Rather, plaintiff learned of the alleged bribery schemes and sting operations only after Bluford published a book in October 2020 titled *The Mighty Have Fallen*. (*Id.* at ¶ 20.) Plaintiff asserts that it has lost all value as a viable company due to the alleged bribery schemes and sting operations because "no municipality in the United States will now do business with a company that was involved in FBI sting operations offering bribes to public officials to secure city contracts." (*Id.* at ¶¶ 39, 51, 63, 75.)

On April 18, 2021, plaintiff initiated this action. (Doc. No. 1.) On April 29, 2021, plaintiff filed its first amended complaint. (Doc. No. 6.) On August 10, 2022, this court granted defendants' motion to dismiss, with leave to amend. (Doc. No. 125.) Plaintiff filed the operative SAC on September 12, 2022, which asserts the following nine causes of action[3]: (1) four claims asserting violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act §§ 1962(c)–(d) against defendants Johnson, West, Harp, Scott, Jones, Stanton, Garcetti, Tubbs, and Lopez (the "RICO defendants"); (2) two state law negligence claims against defendants Johnson, West, Harp, Scott, Jones, Stanton, Garcetti, Tubbs, and Lopez; (3) one state law breach of contract claim against defendant Johnson, (4) one state law fraud claim against defendant Lund; and (5) one state law theft claim against defendant Lund. (Doc. No. 129 at 11, 17, 22, 27, 33, 35, 39, 41–42.)

Defendants Garcetti and Johnson filed motions to dismiss on September 30, 2022 (Doc. Nos. 136, 137); defendant Scott filed a motion to dismiss on October 3, 2022 (Doc. No. 142); defendants Harp, Lopez, Tubbs, and Stanton filed motions to dismiss on October 10, 2022 (Doc. Nos. 146, 147, 148); defendants Jones and Lund filed motions to dismiss on October 11, 2022 (Doc. Nos. 149, 150); and defendant West filed a motion to dismiss on October 24, 2022 (Doc. No. 161.) Plaintiff filed oppositions to the nine pending motions to dismiss on October 14, 2022

[3] Plaintiff's SAC initially asserted ten causes of action. (*See* Doc. No. 129 at 39, 42.) One of these causes of action, however, was asserted against only the City of New Haven, which has since been dismissed as a defendant in this action. (*See id.* at 39; Doc. No. 144.)

(Doc. Nos. 152, 156); October 17, 2022 (Doc. No. 158); October 24, 2022 (Doc. Nos. 163, 165, 167); October 25, 2022 (Doc. Nos. 169, 171); and November 7, 2022 (Doc. No. 178). Defendants Garcetti, Johnson, Scott, Harp, Lopez, Tubbs, and Jones filed replies thereto on October 24, 2022 (Doc. Nos. 160, 162); October 27, 2022 (Doc. No. 173); November 3, 2022 (Doc. Nos. 174, 175); and November 4, 2022 (Doc. No. 176), respectively.[4]

## LEGAL STANDARD

### A. Motion to Dismiss for Failure to State a Claim Pursuant to Rule 12(b)(6)

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989), *abrogated on other grounds by DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117 (9th Cir. 2019). However, the court need not assume the truth of legal conclusions cast in the form of factual allegations. *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and

---

[4] Defendants West, Lund, and Stanton did not file replies in support of their pending motions to dismiss. Pursuant to Local Rule 230(d), a moving party "may" file a reply to any opposition filed by a responding party but is not required to do so.

conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), the court is permitted to consider material that is properly submitted as part of the complaint, documents that are not physically attached to the complaint if their authenticity is not contested and the plaintiffs' complaint necessarily relies on them, and matters of public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).

## ANALYSIS

In their motions to dismiss, defendants argue that plaintiff lacks standing to assert RICO claims, plaintiff's RICO and state law claims fail to state a claim upon which relief may be granted, and upon the dismissal of plaintiffs RICO claims, the court should decline to exercise supplemental jurisdiction over plaintiff's state law claims. (Doc. Nos. 136 at 8–9, 25; 137 at 7–8; 142 at 10–11, 31; 146-1 at 7–8, 29; 147 at 8–9, 26; 148 at 6; 149-1 at 5–6, 19–20; 150-1 at 2, 5; 161 at 3.) The court first considers whether plaintiff has standing to assert civil RICO claims against the RICO defendants.

### A. Plaintiff Lacks Standing to Assert RICO Claims

The civil RICO statutes authorize suits and the award of treble damages against individuals or entities who, through a "pattern of racketeering activity," acquire an interest in, or conduct the business of, an enterprise engaged in interstate or foreign commerce. 18 U.S.C. §§ 1962(b), 1962(c), 1964(d). In particular, §§ 1962(c) and 1962(d), the provisions under which plaintiff asserts its RICO claims here, prohibit conducting the affairs of an enterprise engaged in interstate or foreign commerce through a pattern of racketeering activities or conspiring to do so.

To maintain an action in federal court, plaintiffs must allege facts showing that they have Article III standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Plaintiffs bringing

claims under the federal RICO statute must also meet additional standing requirements.[5] *See Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008). Under RICO's civil enforcement mechanism, "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962] may sue therefor in any appropriate United States district court." 18 U.S.C. § 1964(c). To have standing under § 1964(c), a plaintiff must allege: (1) "that his alleged harm qualifies as injury to his business or property;" and (2) "that his harm was 'by reason of' the RICO violation, which requires the plaintiff to establish proximate causation." *Canyon Cnty.*, 519 F.3d at 972 (citing *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).

In connection with the first requirement, the necessary injury to business or property requires tangible and concrete financial loss, rather than speculative or uncertain harm. *Guerrero v. Gates*, 442 F.3d 697, 707 (9th Cir. 2006); *Steele v. Hosp. Corp. of Am.*, 36 F.3d 69, 71 (9th Cir. 1994). With respect to causation, "[t]he civil RICO statute requires plaintiffs 'to show that a RICO predicate offense not only was a 'but for' cause of [their] injury, but was the proximate cause as well.'" *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 349 F. Supp. 3d 881, 905 (N.D. Cal. 2018) (quoting *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010)), *aff'd*, 842 F. App'x 112 (9th Cir. 2021). Reliance "on an 'attenuated chain of conjecture'" is insufficient to support proximate causation under § 1964(c). *Salmon Spawning & Recovery All. v. Gutierrez*, 545 F.3d 1220, 1228 (9th Cir. 2008) (citation omitted). The "central question" a court must ask when evaluating proximate causation with respect to RICO claims is "whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006).

Plaintiff appears to assert that it has suffered two distinct injuries in connection with the bribery schemes alleged in its SAC. First, plaintiff contends that it was injured "months *before*

---

[5] While challenges to a plaintiff's Article III standing are appropriate for resolution under Federal Rule of Civil Procedure 12(b)(1), "the question of statutory [RICO] standing is to be resolved under Rule 12(b)(6)." *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 974 n.7 (9th Cir. 2008). Here, defendants do not challenge plaintiff's Article III standing, and the court thus conducts its standing analysis pursuant to Rule 12(b)(6).

the publication of the book [by Bluford]" when the City of New Haven canceled its contract with plaintiff "and refused to pay [p]laintiff for goods and services [p]laintiff had already provided to the City of New Haven under the contract," despite plaintiff having already expended "many hundreds of thousands of dollars" in furtherance of that agreement. (Doc. Nos. 152 at 13; 156 at 13; 158 at 14; 163 at 14; 165 at 14–15; 167 at 14–15; 169 at 14–15; 178 at 13.) Second, as alleged in the SAC, plaintiff asserts that it was injured by damage to its reputation caused by the alleged bribery schemes, noting that "[b]efore the bribery scheme[s] became public knowledge, [p]laintiff was valued at $15 Million Dollars," but after Bluford's book was published, "the value of [p]laintiff has plummeted to zero," and "no municipality in the United States will now do business with a company that was involved in FBI sting operations offering bribes to public officials to secure city contracts." (Doc. No. 129 at ¶ 63; *see also, e.g.*, Doc. No. 156 at 15.)

The parties do not dispute that plaintiff has sufficiently alleged that it suffered an injury to its business or property for the purposes of a RICO standing analysis; rather, the parties dispute whether plaintiff has sufficiently alleged that the alleged bribery schemes were the proximate cause of these injuries. (*See, e.g.*, Doc. Nos. 137 at 14–15; 152 at 12–13.) The court will consider in turn whether plaintiff has adequately alleged that the alleged RICO violations were the proximate cause of its two alleged injuries, which is required in order for plaintiff to have standing to assert its RICO claims. *See Canyon Cnty.*, 519 F.3d at 972.

Plaintiff attempts to connect its first alleged injury to the alleged bribery schemes by arguing that the City of New Haven canceled its contract with plaintiff because "the FBI informed the City of New Haven in February of 2020 that its contract with [p]laintiff had not been obtained 'in good faith.'" (*See, e.g.*, Doc. No. 156 at 13.) However, this allegation alone does not indicate that the alleged bribery schemes are what "led directly" to the alleged harm to plaintiff stemming from the City of New Haven's decision to cancel its contract with plaintiff. *See Anza*, 547 U.S. at 461. To the contrary, this alleged injury describes a monetary loss stemming from a contracting party's non-performance of that contract. Indeed, plaintiff even argues in its oppositions to the pending motions that it has "voluntarily dismissed the City of New Haven from this action in order to bring its *breach of contract* action against the City of New Haven in the appropriate

federal district court." (*See, e.g.*, Doc. No. 156 at 12) (emphasis added). Thus, as alleged by plaintiff, the City of New Haven's alleged nonperformance, rather than the RICO defendants' alleged bribery schemes, was the proximate cause of plaintiff's injury in this regard. Although plaintiff contends that the FBI "intervened to prevent the City of New Haven from compensating plaintiff," in theory, the City of New Haven could have refused to accept any alleged bribe payments while still proceeding to pay plaintiff for the services plaintiff rendered, in which case, plaintiff would not have sustained the claimed injury. (Doc. No. 156 at 13.) In other words, as alleged, the City of New Haven's alleged nonperformance, rather than the alleged bribery schemes themselves, led directly to plaintiff's first claimed injury. Accordingly, plaintiff has failed to establish that the alleged RICO violations were the proximate cause of plaintiff's first alleged injury. *See Guerrero v. Gates*, 110 F. Supp. 2d 1287, 1292 (C.D. Cal. 2000) ("A plaintiff only has [RICO] standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation.").

With respect to plaintiff's second alleged injury of loss of business value due to reputational harm stemming from the alleged bribery schemes, the RICO defendants argue that the municipalities at the center of the schemes alleged by plaintiff—New Haven, Stockton, Phoenix, and Los Angeles—were the *direct* victims of the alleged RICO violations, and any injury resulting to plaintiff was *indirect*. (*See* Doc. Nos. 136 at 17; 137 at 13–14; 142 at 19–20; 146-1 at 16; 147 at 15; 148 at 7–8; 149-1 at 17; 161 at 3.) Because proximate causation in the RICO standing context requires "some *direct* relation between the injury asserted and the injurious conduct alleged," the RICO defendants argue that plaintiff has failed to establish proximate causation and thus lacks standing to assert its RICO claims. *Anza*, 547 U.S. at 457 (citing *Holmes*, 503 U.S. at 259) (emphasis added); (*see* Doc. Nos. 136 at 16; 137 at 15; 142 at 21; 146-1 at 17; 147 at 15; 148 at 7; 149-1 at 17; 161 at 3.) In opposition, plaintiff counters that while "[t]he municipalities may have been the *intended* victim of the bribery schemes by the RICO defendants, . . . the only *actual* victim was [p]laintiff." (Doc. No. 156 at 19) (emphasis in original). Specifically, plaintiff argues that it was the direct victim of the alleged bribery schemes, not the municipalities, because the FBI protected the municipalities from suffering any

harm from the alleged sting operations[6] and/or would have stopped the municipalities from paying plaintiff for its services. (Doc. Nos. 152 at 12; 156 at 12–13; 158 at 13; 163 at 13; 165 at 13–14; 167 at 13–14; 169 at 14; 178 at 12.)

Although plaintiff argues that the FBI would have prevented the municipalities from paying plaintiff, plaintiff cites no authority in support of the proposition that a municipality is only a victim of its public officials' illegal behavior if the municipality actually pays for a contract obtained in bad faith.[7] (*See, e.g.*, Doc. No. 152 at 12–13.) Even assuming, without deciding, that plaintiff is correct in this regard, it does not follow that if the municipalities in question are not technically eligible to have been direct legal victims of the RICO defendants' behavior, then plaintiff must necessarily have been a direct victim of the alleged bribery schemes. Rather, "the central question . . . is whether the alleged [RICO] violation led directly to the plaintiff's injuries." *Anza*, 547 U.S. at 461.

In this case, plaintiff has not alleged facts that, if proven, would establish that the alleged RICO violation led directly to his second alleged injury. To the contrary, plaintiff's allegations suggest that it was the public discovery of the alleged RICO violations that led directly to this injury: plaintiff alleges that "[b]efore the bribery scheme[s] became public knowledge, [p]laintiff was valued at $15 Million Dollars," but "[a]fter the bribery scheme[s] became public knowledge, the value of [p]laintiff has plummeted to zero." (Doc. No. 129 at ¶ 39.) Thus, the court agrees

---

[6] Notably, as pointed out by defendant Garcetti, it is unclear from the face of plaintiff's SAC how the FBI would have protected the municipalities from suffering any harm from the alleged schemes, because, according to the SAC, at least some of the alleged bribes occurred *before* the FBI allegedly involved itself by initiating sting operations. (*Compare* Doc. No. 129 at ¶ 57 (alleging that defendant Garcetti agreed to a bribery scheme in May 2018) *with id.* at ¶ 22 (describing the incipience of the FBI's sting operations in October 2018)); (*see also* Doc. No. 160 at 8.)

[7] Similarly, as noted by defendant Garcetti, despite plaintiff's argument that "involving [p]laintiff as an unknowing and unsuspecting participant in criminal activity is . . . a direct and substantial harm to plaintiff all by itself" (Doc. No. 156 at 15), plaintiff "does not cite a single case holding that merely involving a plaintiff in criminal activity gives that plaintiff standing to assert a RICO claim" pursuant to § 1964(c). (Doc. No. 160 at 9.) Plaintiff's lack of support for this argument is particularly noteworthy given that the district judge previously assigned to this case rejected this same argument in the order dismissing plaintiff's first amended complaint "because [p]laintiff provide[d] no authority for this assertion." (Doc. No. 125 at 11 n.7.)

with the RICO defendants that plaintiff "pleads injury suffered from the public exposure of the [alleged bribery] scheme[s]," rather than pleading injury caused by the alleged bribery schemes themselves. (*See* Doc. Nos. 136 at 17; 137 at 7–8; 142 at 21–22; 146-1 at 12; 147 at 15–16; 148 at 7; 149-1 at 17.) Here, the alleged RICO violations were allegedly intended to benefit plaintiff by helping it obtain city contracts, such that "the commission of the RICO violations was not what injured [plaintiff]," but rather "the exposure of those acts."[8] *In re Am. Exp. Co. S'holder Litig.*, 39 F.3d 395, 400 (2d Cir. 1994). An injury caused by the public exposure of a RICO violation does not satisfy the proximate cause requirement with respect to a plaintiff's standing to assert a RICO claim. *See id.*; *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. 3:16-cv-02086-CR, 2019 WL 6749534, at *4 (N.D. Cal. Dec. 6, 2019) (finding that the "chain of causation between the challenged conduct and the [plaintiffs'] damages is . . . lacking" where it was the "fraud's discovery, not the fraud itself, that caused the [plaintiffs'] buyback-related losses"), *aff'd*, 842 F. App'x 112 (9th Cir. 2021); *Meng v. Schwartz*, 116 F. Supp. 2d 92, 97 (D.D.C. 2000) (finding that proximate causation for RICO purposes is not established where an injury arises "as a result of the scandal, not the scheme itself"), *aff'd*, 48 F. App'x 1 (D.C. Cir. 2002); *see also Hemi Grp.*, 559 U.S. at 11 (declining to extend RICO liability "to situations where the defendant's fraud on the third party (the State) has made it easier for a fourth party . . . to cause harm to the plaintiff"); *In re Brocade Commc'ns Sys., Inc. Derivative*

[8] Plaintiff also alleges that plaintiff itself only became aware of the alleged bribery schemes when the public did, upon the publication of Bluford's book entitled *The Mighty Have Fallen* in October 2020. (Doc. No. 129 at ¶ 22.) In its oppositions to the pending motions, plaintiff reiterates its previously unsuccessful argument that the publication of Bluford's book was not the proximate cause of plaintiff's injuries because "[p]ublic policy dictates that the publishing of a book is [a] constitutionally protected activity and as a matter of law cannot be found to be the proximate cause of [p]laintiff's damages." (*See, e.g.*, Doc. No. 156 at 16.) In this regard, plaintiff appears to assume that it *must* somehow have standing to bring this action, opine that one potential proximate cause of its injuries would not confer standing, and from there, conclude that the proximate cause of its injuries must necessarily instead be defendants' alleged bribery schemes. Plaintiff is simply incorrect and its *ipse dixit* reasoning unpersuasive. Plaintiff may not pick and choose the proximate cause of its injuries simply based upon what would increase its chances of success in this action. In any event, and as the court explained in rejecting this identical contention in the prior order dismissing plaintiff's first amended complaint, "[t]he [c]ourt does not find this argument persuasive because [p]laintiff provides no authority for this assertion." (Doc. No. 125 at 11 n.7.)

*Litig.*, 615 F. Supp. 2d 1018, 1043 (N.D. Cal. 2009) ("Where conduct was not intended to injure the plaintiff, a RICO claim may not survive, even if the plaintiff eventually suffered harm"). Accordingly, plaintiff has failed to allege facts that, if proven, would establish that the alleged RICO violations were the proximate cause of plaintiff's second alleged injury.

Because plaintiff has failed to sufficiently allege that it suffered injury by reason of the alleged RICO violations, the court finds that plaintiff lacks standing to assert its RICO claims. In reaching this conclusion, the court agrees with the RICO defendants that plaintiff has not pled sufficient facts in its SAC to alter the court's prior conclusion, which was set forth in the order dismissing plaintiff's first amended complaint, that plaintiff did not have standing to assert its RICO claims because plaintiff was "directly harmed by the *public exposure* of the bribery schemes and therefore only indirectly from the bribery schemes themselves." (Doc. No. 125 at 11; *see also* Doc. Nos. 136 at 21; 137 at 8; 142 at 10; 146-1 at 7; 147 at 8–9; 148 at 6.) Because plaintiff has previously been granted leave to amend and failed to cure the pleading deficiencies identified by the court, the court finds that the granting of further leave to amend here would be futile. *See Telesaurus VPC, LLC v.* Power, 623 F.3d 998, 1003 (9th Cir. 2010) ("A district court may deny a plaintiff leave to amend . . . if the plaintiff had several opportunities to amend its complaint and repeatedly failed to cure deficiencies."); *Boyack v. Regis Corp*., 812 F. App'x 428, 431 (9th Cir. 2020)[9] (affirming dismissal without leave to amend due to a plaintiff's failure to cure pleading deficiencies); *see also Kendall v. Visa U.S.A., Inc*., 518 F.3d 1042, 1051 (9th Cir. 2008) ("Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment."); *Ascon Props., Inc. v. Mobil Oil Co*., 866 F.2d 1149, 1160 (9th Cir. 1989) (noting that "[l]eave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility"). Therefore, the court will grant the RICO defendants' motions to dismiss plaintiff's RICO claims without leave to amend.[10]

---

[9] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

[10] Because the court grants the RICO defendants' motions to dismiss plaintiff's RICO claims due to plaintiff's lack of standing, the court need not address the remainder of the RICO defendants' Rule 12(b)(6) arguments with respect to these claims.

### B. Plaintiff's Remaining State Law Claims

Plaintiff brings this action in this court on the basis of federal question jurisdiction pursuant to 28 U.S.C. § 1331. (Doc. No. 129 at ¶ 1.) Because the court is dismissing plaintiff's RICO claims, only plaintiff's state law causes of action remain. Defendants Johnson, Scott, Harp, Lopez, Tubbs, Stanton, Jones, and West contend that the court should decline to exercise supplemental jurisdiction over those state law claims because plaintiff's federal claims are subject to dismissal.[11] (Doc. Nos. 137 at 26–27; 142 at 31; 146-1 at 26; 147 at 26; 148 at 13; 149-1 at 19; 161 at 3.) Plaintiff addresses the issue of this court's jurisdiction over its state law claims only in its opposition to defendant Lund's pending motion to dismiss. (Doc. No. 171 at 3–4.) Therein, plaintiff argues that defendant Lund's motion to dismiss in this regard identifies only a "hypothetical situation" in which plaintiff's RICO claims are dismissed and asserts that it is "totally improper and frivolous for [d]efendant Lund to file a motion to dismiss based on a hypothetical circumstance which does not exist, and which may never exist." (*Id.* at 3.) Unfortunately for plaintiff, that "hypothetical situation" does, in fact, now exist.

"The elimination of federal claims does not automatically deprive district courts of subject matter jurisdiction over state law claims." *Salinas v. Foucault-Grgich*, No. 21-cv-04920-DMR, 2022 WL 3998503, at *3 (N.D. Cal. Aug. 31, 2022). Once all federal claims have been dismissed from a case, whether to retain jurisdiction over any remaining state law claims is left to the discretion of the district court. *See* 28 U.S.C. § 1367(c)(3); *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997). Generally, if federal claims are dismissed prior to trial, state law claims should be remanded to state court "both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers v. Gibbs of Am.*, 383 U.S. 715, 726 (1966); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) (noting that "in the usual case in which all federal-law

---

[11] Defendant Lund raises a similar, but slightly different, argument in his pending motion. He argues that plaintiff's state law claims should be dismissed for lack of subject matter jurisdiction if the motions to dismiss plaintiff's RICO claims are granted, and, to that end, requests that the court first consider the RICO defendants' pending motions to dismiss before ruling upon his motion to dismiss. (Doc. No. 150-1 at 2, 5–6.)

claims are eliminated before trial, the balance of factors to be considered . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.”). If the court declines to exercise supplemental jurisdiction over the state-law claims in a case initially filed in federal court, the court must dismiss those claims without prejudice. *See Carnegie-Mellon Univ.*, 484 U.S. at 350–51 (concluding that “[w]hen the balance of these factors indicates that a case properly belongs in state court, . . . the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice” because “remand [is] not an option”). The factors to be weighed are “the values of judicial economy, convenience, fairness, and comity.” *Id.* at 350.

The court concludes that the exercise of supplemental jurisdiction over plaintiff’s state law claims is not warranted in this case. The parties have raised multiple arguments related to the application of California law to plaintiff’s state law claims for negligence, breach of contract, fraud, and theft. (*See* Doc. Nos. 136 at 28–29; 137 at 22–24; 142 at 32–34; 146-1 at 27–28; 147 at 20–25; 148 at 13; 152 at 25–28; 156 at 24; 158 at 29; 160 at 17–18; 161 at 3; 162 at 11–13; 163 at 29–30; 165 at 27–29; 167 at 28–29; 169 at 29; 178 at 25; 173 at 10–11; 174 at 9; 175 at 13–14; 176 at 5–6.) These disputes are best resolved by state courts, since the role of the federal courts in addressing state law claims is to attempt to divine how the California Supreme Court would determine any particular issue. *See Vernon v. City of Los Angeles*, 27 F.3d 1385, 1391 (9th Cir. 1994). This is a task for which the state courts are better suited and declining to exercise supplemental jurisdiction under such circumstances is appropriately respectful of the dual sovereignty of the federal government and the state of California. Moreover, since this is only the second order ruling on motions to dismiss filed in this case, judicial economy does not compel the exercise of supplemental jurisdiction over plaintiff’s remaining state law claims. *See Aguaristi v. Cnty. of Merced*, No. 1:18-cv-01053-DAD-EPG, 2022 WL 2392621, at *18 (E.D. Cal. July 1, 2022) (finding that judicial economy did not compel the exercise of supplemental jurisdiction over plaintiff’s remaining state law claims where the pending motion for summary judgment was “only the second motion filed in this case on which the court has ruled”). In sum, the court concludes that the interests of comity and justice are best served by this court declining the

/////

exercise of supplemental jurisdiction over plaintiff's remaining state law claims.[12] Plaintiff's state law claims will therefore be dismissed without prejudice to the refiling of those claims in state court.[13]

**CONCLUSION**

For the reasons set forth above,

1. The motions to dismiss filed on behalf of defendants Garcetti, Johnson, West, Harp, Jones, Scott, Tubbs, Lopez, and Stanton (Doc. Nos. 136, 137, 142, 146, 147, 148, 149, 161) are granted, in part, as follows:

    a. Defendants Garcetti's, Johnson's, West's, Harp's, Jones's, Scott's, Tubbs's, Lopez's, and Stanton's motions to dismiss plaintiff's RICO claims for lack of standing (Doc. Nos. 136, 137, 142, 146, 147, 148, 149, 161) are granted, without leave to amend; and

    b. The remainder of defendants Garcetti's, Johnson's, West's, Harp's, Jones's, Scott's, Tubbs's, Lopez's, and Stanton's motion to dismiss (Doc. Nos. 136, 137, 142, 146, 147, 148, 149, 161) are denied as having been rendered moot by this order;

2. The court declines to exercise supplemental jurisdiction over plaintiff's remaining state law claims, and those claims are dismissed without prejudice to their filing in state court;

---

[12] The court also notes that any applicable statute of limitations under state law has been tolled during the pendency of this action. *See* 28 U.S.C. § 1367(d) (tolling the limitation period for any claim asserted in a federal action by way of supplemental jurisdiction both while the claim is pending "and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period"); *Artis v. District of Columbia*, ___ U.S. ___, 138 S. Ct. 594, 598 (2018) ("We hold that § 1367(d)'s instruction to 'toll' a state limitations period means to hold it in abeyance, i.e., to stop the clock.").

[13] As described above, defendant Lund's motion to dismiss is based only upon the court's lack of subject matter jurisdiction over this action following the dismissal of plaintiff's federal claims. (*See* Doc. No. 150-1 at 2.) Because the court is dismissing plaintiff's federal claims in this action and declines to exercise supplemental jurisdiction over plaintiff's remaining state law claims, the court will deny defendant Lund's motion to dismiss (Doc. No. 150) as having been rendered moot by this order.

3. Defendant Lund's motion to dismiss (Doc. No. 150) is denied as having been rendered moot by this order; and

4. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: **April 13, 2023**

Dale A. Drozd
UNITED STATES DISTRICT JUDGE